IN RE ESTATE OF EMMA JOSEPHINE BROWN.

C. J. LYNCH, Jr., Administrator, Appellant, v. LILA WALSHIRE, Appellee.

No. 40718.

1296

April 10, 1931.

Rehearing Denied October 5, 1931.

Donnelly, Lynch, Anderson & Lynch, for appellant.

Wells C. Peck and J. C. France, for appellee.

Grimm, J.—Appellant is the administrator of the estate of the decedent, Emma Josephine Brown, who died June 19, 1930. For many years prior to her death, the decedent had resided in the house adjoining that of appellee, Lila Walshire, and during much of this time decedent engaged appellee to assist her in the doing of her housework. In performing this work, appellee would go back and forth from her own home, which she cared for at the same time. Appellee was paid different sums of money for this service, but always such amount as the decedent determined, and without contract or specific agreement.

On February 22, 1930, while the appellee was engaged in looking after the house work of the decedent and caring for the stove in the decedent's home, the decedent had in her possession a certain box which she kept in her home and in which she kept her papers. The decedent was in the act of examining her papers in this box when a conversation ensued between the decedent and the appellee. There was no one else present. Both appellee and appellant claim the ownership of the property in question, based upon the testimony of the appellee as to what occurred that day in the house of the decedent. We will give only portions of the testimony as illustrating the claims of either side. The following is from the direct examination of the appellee, Lila Walshire:

"I have a note made by Mr. Peck in my possession. The

first day I ever saw this note, which is dated March 1, 1918, and signed by Chester D. Peck and payable to the Helmer & Gortner State Bank, was February 22, 1930, the day she gave it to me. She took it out of a little wooden box in which she kept her papers and which she was going through to get some papers or to look up some interest. I was fixing the coal fire and she had that note, (the one in question) in her hand; she had always wanted to give me something and so then she says—well, she mentioned it right there—she says, 'I want to give you something.' So I says, 'Emma, what do you want to give me and how much do you want to give me,' and she says, '$2,000.00.' So she says, 'I want to give you this,' and she set in her rocking chair holding it (the note in question) and says, 'I want to give you this.' I had never seen this note before this day, the 22nd of February.''

The decedent then endorsed on the back of the note the following:

"Emma J. Brown to Lila Walshire, February 22, 1930.''

The note was then delivered to Lila Walshire, by the deceased, and it has been in her possession, custody and control under claim of complete ownership by her, ever since, except for a few days.

After the death of Emma J. Brown, the appellee took the note to one Harry Gibeaut, a banker in the town where these parties lived. Appellee testified:

"Mr. Gibeaut came to my home the day Emma was buried and I handed him the note asking him to let Emma Brown's heirs know about the note. He brought it back to me more than a month ago, after he had explained matters to them, and I have held the possession of it since that time.''

It also appears from the record that at the time "Emma,'' as the decedent is called in the record, was in the act of giving the note to appellee, appellee said:

"I told Emma it wasn't legal, that it could not become my property unless she would sign it, that she would have to sign it.''

Whereupon, the decedent made the endorsement as hereinbefore set forth.

Throughout the entire examination of the appellee, she stoutly maintained the note to be her property, that she always considered it her property from the date when the note was given her by the decedent.

On the other hand, the appellant contends that there was not a gift by the decedent to the appellee. It appears from the record that at the time the note was passed to the appellee, the appellee said, among other things, in fact or in substance:

"Well, I says to her, if there comes a time when you need the use of this, use it."

In explanation of this statement, the witness later said, "It would be like me giving her what she needed at the time. I felt as though it was my property. Of course, it was my property."

Another time the witness said, "Anyone so near and dear to me I would take them in my home if it came down to where she didn't have anything."

The foregoing statements are illustrative of others of the same general character.

Without further quotations from the record, we think it certainly appears that what was said by the appellee was a mere expression of thankfulness on her part and a declaration to the effect that if at any time the decedent should really come to want, the appellee would gladly help her out. At all events, the lower court would be warranted in reaching that conclusion, as would the lower court be warranted in concluding there was a completed gift.

The statute under which this proceeding was had is as follows:

"11925. Discovery of assets. The court or judge may require any person suspected of having taken wrongful possession of any of the effects of the deceased, or of having had such effects under his control, to appear and submit to an examination under oath touching such matters, and if on such examination it appears that he has the wrongful possession of any such property, the court or judge may order the delivery thereof to the executor or administrator."

This statute was before this court for interpretation in Barto v. Harrison, 138 Iowa 413. The court said, in commenting upon said Section 11925 (then Section 3315), as follows:

"The proceeding authorized is inquisitorial in its nature, and designed especially as an economical and efficient mode of discovering property of the estate. The parties are not to be heard as on a trial. The person cited to appear only may be examined. The court or judge is not to try any issue of fact as to whether such person cited to appear is in the wrongful possession of property of the estate, but only to determine whether there is such an issue, and, if there is not and the title is conceded to be in the estate, the order should be entered. Rickman v. Stanton, 32 Iowa 134; Smyth v. Smyth, 24 Iowa 491. But if it develops in the examination that the title to the property is in dispute, or that there is some controversy as to whether the estate is entitled thereto, then the administrator or executor must be relegated to procedure usually resorted to in order to adjudicate such issues. Otherwise, the person cited would be deprived of due process of law in being compelled to submit his claim to a judge without trial or the intervention of a jury."

Appellant lays stress upon In re Estate of Elliott, 159 Iowa 107. An examination of the case discloses that it is not at all analogous to the case at bar. In the Elliott case, there was not even an attempt at physical or symbolic delivery of the property in controversy. In the case at bar, there was at least a physical delivery of the note, coupled with an actual endorsement on the note by the decedent to the appellee. There has been continued physical possession of the property in the intervening time, coupled with a positive claim of complete ownership by the appellee. Appellant's claim is based largely upon the cross-examination of the appellee.

As was said in Barto v. Harrison, 138 Iowa 413: "* * * the title to the property is in dispute, or that there is some controversy as to whether the estate is entitled thereto, then the administrator or executor must be relegated to procedure usually resorted to in order to adjudicate such issues."

It would have been error for the court in this inquisitorial proceeding to have determined the much controverted question of ownership to the note.

What is herein said concerning the facts is without prejudice to any hearing which may be had in a proper procedure to determine the ownership of the note in question.

The cause must be, and is, Affirmed.

FAVILLE, C. J., and STEVENS, ALBERT and WAGNER, JJ., concur.